IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  06-cv-01629-LTB

REX N. INTCHAUSPI,

       Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

       Defendant.
_____

ORDER
_____

Plaintiff, Rex N. Intchauspi, appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and his application for supplement security income, filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c.  Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral arguments will not materially aid in the resolution of this appeal.  After consideration of the parties' briefs, as well as the administrative record, I REVERSE the SSA Commissioner's final order and REMAND for further proceedings.

### I.  STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income protectively filed on March 31, 2003. [Administrative Record ("AR") 49, 877]  The applications were initially denied on June 5, 2003. [AR 43, 880]  An Administrative Law Judge ("ALJ") subsequently conducted an

evidentiary hearing and issued a written ruling on March 10, 2006, denying Plaintiff's applications on the basis that he was not disabled because he retained the residual functional capacity to perform a significant range of work at the light level of exertion, with restrictions, which existed in significant numbers in the national economy (Step Five). [AR 11-23]  On June 15, 2006, the SSA Appeals Council denied Plaintiff's administrative request for review of the ALJ's determination, making the SSA Commissioner's denial final for the purpose of judicial review. [AR 6]  Plaintiff timely filed his complaint with this court on August 16, 2006, seeking review of the Commissioner's decision.

## II.  FACTS

Plaintiff was born on March 27, 1959, and was 45 years old on the date of the ALJ's decision. [AR 21, 43, 897]  He has a high school education and two years of college education. [AR 75, 897]  His relevant prior work history includes construction painter, miner and truck driver. [AR 70, 79, 108]  Plaintiff alleges that he became disabled on July 1, 2000, due to back, neck and shoulder injuries after a motor vehicle accident, bipolar disorder, and manic depression. [AR 69]

Plaintiff's medical records indicate that Plaintiff was involved in a motor vehicle accident in July 2000, resulting in a compression fracture of his thoracic spine. [AR 107, 582]  On February 13, 2001, a cervical MRI revealed degenerative changes. [AR 121]  Suzanne deRoin, F.T.P., a nurse practitioner, assessed degenerative changes in the C-Spine with foraminal compromise and hypertension. [AR 345, 367, 389]  A subsequent neurosurgical evaluation on April 11, 2001, was essentially normal but with possible decreased left triceps reflex and non-dermatormal sensory changes. [AR 367]

The medical records also reveal a lengthy mental health treatment history with the Denver Veterans Administration ("VA"), dating from 1991, including numerous hospitalizations for depression, suicide attempts, auditory hallucinations, and substance abuse. [AR 579, 569, 138, 141, 583, 107, 163, 803]

On October 5, 2001, Dr. F. Bruce Merrill, M.D., performed a consultative psychiatric examination to assess the functional impacts of Plaintiff's mental impairments. [AR 106-109]  Dr. Merrill diagnosed Plaintiff with moderate to severe post traumatic stress disorder, and severe chronic bipolar disorder. [AR 109]  Dr. Merrill felt that Plaintiff was "rather severely compromised in his ability to do basic work-related activities such as understanding, memory, sustained concentration, persistence and pace, social interaction, and adaptation." [AR 109] Plaintiff demonstrated manic thinking and talking that, together with his mood swings, "would certainly interfere with the basic activities of a job and undoubtedly would make him sooner or later unemployable." [AR 109]

Plaintiff was hospitalized in January of 2003 for increased paranoia. [AR 133]   Plaintiff's mental treatment team at the VA subsequently concluded that his hospitalization was motivated by secondary gain. [AR 136, 163, 238]

On February 27, 2003, Plaintiff was again admitted to the hospital for a worsening pattern of auditory hallucinations. [AR 223]  An MRI of Plaintiff's brain revealed "extensive supratentorial deep white matter disease" and an MRI of his cervical spine revealed mild disc bulging. [AR 118, 128] A psychology consultation report concluded that Plaintiff had test findings consistent with a somotization disorder, and a focus on physical complaints. [AR 164]

Upon discharge, on March 18, 2003, Plaintiff was diagnosed with bipolar mood disorder, psychosis NOS, and personality disorder. [AR 170]

On June 4, 2003, a state agency psychologist, Dr. A. Zinneck, M.D., reviewed Plaintiff's medical records and determined that his psychotic disorder, bipolar disorder, personality disorder, and history of polysubstance abuse resulted in moderate limitations in his activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace, with one or two episodes of decompensation. [AR 634]  In a mental residual functional capacity assessment, Dr. Zinneck concluded that Plaintiff was not significantly limited in most areas of functioning, but had moderate limitations in his ability to understand and remember detailed instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and accept instructions and respond appropriately to supervisors.  Dr. Zinneck also found Plaintiff was moderately to markedly limited in his ability to carry out detailed instructions, and was markedly limited in his ability to interact appropriately with the general public. [AR 630-31]  With these limitations, Dr. Zinneck opined that Plaintiff could perform simple routine work that could be learned in 30 days, but that he would not do well serving the public. [AR 632]

In November 2004, Plaintiff was admitted to the hospital for a presumed drug overdose. [AR 863]  On November 29, 2004, the resident psychologist evaluated Plaintiff for possible suicidal ideation, and assessed bipolar disorder with psychotic features, narcotic abuse and poly-substance abuse. [AR 846]

On January 5, 2005, Ms. deRoin completed a physical residual functional capacity questionnaire. [AR 669-673]  Ms. deRoin indicated that Plaintiff's pain frequently interfered with his attention and concentration and that he was incapable of performing even low stress jobs. [AR 670]  Ms. deRoin opined that Plaintiff could lift and carry less than 10 pounds frequently and 10 pounds occasionally; could stand and walk about 2 hours in an 8 hour working day, shifting positions at will from sitting, standing, and walking and frequently take unscheduled breaks during an 8 hour working day for approximately 30 minutes at a time; could rarely perform most posturals; and, on average, would likely be absent from work more than 4 days per month. [AR 670-72]

On July 15, 2005, a pain psychology evaluation assessed Plaintiff with major depression with history of psychotic features, polysubstance abuse, pain disorder due to both psychological factors and a general medical condition, and personality disorder NOS with anti-social features. [AR 804]  The evaluation noted that Plaintiff had chronic mental health issues and a recurrent pattern of misuse of his medications, which made effective pain management very difficult.  The report recommended that Plaintiff be encouraged to attend therapy and to use paced activity and distraction techniques, as well as better coping, to support his pain management. [AR 804]

On September 28, 2005, Plaintiff was admitted to the hospital for treatment of hypoxia secondary to pneumonia and possible contribution from his narcotics.  [AR 764]

On October 27, 2005, Ms. deRoin completed another residual functional capacity questionnaire regarding Plaintiff's physical limitations.  [AR 664]  She indicated Plaintiff could walk four blocks at a time; sit for one hour at a time and for a total of six hours in an eight-hour work day; could stand 45 minutes at a time and for four hours in an eight-hour work day; needed

5

to walk around for five minutes every hour; needed a job that allowed for shifting positions at will; could frequently lift and carry less than 10 pounds and occasionally lift and carry 10 pounds; could occasionally turn his head to the right or left; could rarely look up or down or hold his head in a static position; could occasionally stoop and climb stairs; could rarely twist, crouch, or climb ladders; could never reach overhead; would miss more than four days of work per month; and could not drive or operate machinery. [AR 665]

On the same date, Dr. Donald K. Winter, M.D., Plaintiff's treating psychiatrist at the VA, completed a mental impairment questionnaire indicating diagnoses of bipolar disorder, psychotic disorder NOS, and polysubstance abuse. [AR 674]  In his assessment, Dr. Winter opined that Plaintiff would be unable to meet competitive standards in completing a normal workday/ workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and dealing with normal work stress. [AR 676]  He further opined that Plaintiff would be absent from work more than four days per month. [AR 678]  Dr. Winter concluded that Plaintiff's chronic mood and psychotic symptoms severely limited his work capacity, but did not preclude it.  [AR 675]

Plaintiff testified at the hearing as to his physical pain and the associated treatment. [AR 896]  He indicated that his pain limited his ability to concentrate and understand. [AR 897] Plaintiff also testified as to his treatment for his drug and alcohol problems, depression and "bipolar, manic depressive," and his resulting restricted daily activities. [AR 897-99, 899-902]

### III. LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II and Title XVI of the Social Security Act which is generally defined as the

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137, 107 S.Ct.  2287, 96 L.Ed.2d 119 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity.  If he is, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520, 416.920.  Step Two is a determination whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant is unable to show that his medical impairments would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits.  Step Three determines whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment is not listed, he is not presumed to be conclusively disabled.  Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past.  If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(e)&(f), 416.920(e)&(f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

## IV. ALJ's RULING

The ALJ ruled that Plaintiff had not engaged in substantial gainful activity at any time relevant to this decision (Step One). [AR 16]  The ALJ determined that Plaintiff has the following severe combination of impairments:  affective disorder, anxiety disorder, poly-substance abuse disorder, right shoulder impairment, thoracic spine impairment, and cervical spine impairment (Step Two). [AR 16]  However, the ALJ further determined that such impairments or combination of impairments do not meet or medically equal a listed impairment deemed to be so severe as to preclude substantial gainful employment (Step Three). [AR 16]  As a result, the ALJ went on to find that Plaintiff has the RFC to:

> perform light exertional work with lifting and/or carrying 10 pounds occasionally; sitting six hours in an eight hour workday; standing and/or walking six hours in an eight hour workday; no climbing ladders, ropes, or scaffolds; no over chest level work; no pushing or pull; no work around unprotected heights or moving machinery; simple repetitive work; no complex tasks ([Specific Vocational Preparation] 2 or less – defined as simple, rote, repetitive work that can be learned within 30 days or less); and no dealing with the general public.  [AR 17]

Because Plaintiff was unable to perform any past relevant work (Step Four), the ALJ went on to determine that, considering his age, education, work experience and RFC, there are jobs that exist in the national economy that Plaintiff can perform. [AR 22]  As a result, the ALJ concluded that Plaintiff was not disabled at Step Five of the sequential process and, therefore, was not under disability as defined by the Social Security Act. [AR 23]

## V.  STANDARD OF REVIEW

This court's review here is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).   Thus, the function of my review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom; if they are so supported, they are conclusive upon [this] reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  With regard to the application of the law, reversal may be appropriate when the SSA Commissioner either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996).

## VI. ISSUES ON APPEAL

*A.  Assessment of Treating Physician's Opinion (Dr. Winter)*

On appeal of the ALJ's ruling, Plaintiff first claims that the ALJ failed to properly weigh the opinion of his treating psychiatrist, Dr. Winter.  Because the ALJ's order fails to demonstrate correct application of the treating physician's rule, I agree.

The ALJ must consider every medical opinion to determine the weight each opinion should be given.  20 C.F.R. § § 404.1527(d) and 416.927(d).  The weight given a treating physician's opinion is determined using a two step inquiry.  First, the ALJ must determine whether to give the treating physician's opinion controlling weight.  Second, if the ALJ determines the treating physician's opinion is not entitled to controlling weight, the ALJ must then determine

9

how much weight to give the opinion by applying the six factors provided in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

The first step of the treating-physician inquiry – whether to give the treating physician's opinion controlling weight – requires a sequential analysis of two factors. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *see also Langley v. Barnhart,* 373 F.3d 1116, 1121 (10th Cir. 2004)(applying the treating physician's rule to a treating psychiatrist's opinion).  The first factor is a determination of whether the treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  The second factor is whether the opinion is consistent with other substantial evidence on the record.  *Watkins v. Barnhart*, *supra*, 350 F.3d at 1300.  If the opinion of the treating physician  meets both these factors it "must be given controlling weight; i.e., it must be adopted."  Soc. Sec. Ruling 96-2p ("SSR 96-2p").

If the ALJ finds that the opinion does not meet either of these two factors, it is not entitled to controlling weight and the ALJ must proceed to the second step, which is a determination of how much weight to give the opinion.  As such,  it must be weighed using the six factors provided in 20 C.F.R. §§  404.1527(d)(2) and 416.927(d)(2).  SSR 96-2p; *Watkins v. Barnhart*, *supra*, 350 F.3d at 1300.  These factors are:

(1) the length of the treatment relationship and the frequency of the examination;

(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

(3) the degree to which the physician's opinion is supported by relevant evidence;

(4) consistency between the opinion and the record as a whole;

>> (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>> 
>> (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* After considering these factors, "the ALJ must give good reasons in [the] . . . decision for the weight he ultimately assigns the opinion . . . [and] if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id*. at 1301. Unless good cause is shown to the contrary, a treating physician's opinion should be given substantial weight. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

An ALJ must articulate his reasoning with specific and legitimate findings at each step of the inquiry so that a subsequent reviewing court can determine the weight accorded to each opinion and the reasons for that weight. *Id.* (*citing* SSR 96-2p)*; Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996). A reviewing court will not presume the ALJ applied the correct legal standards absent this analysis. *Watkins v. Barnhart*, *supra*, 350 F.3d at 1301.

Here, the ALJ's order related to Dr. Winter's various opinions consists of a jumble of observations and analysis, but fails to reveal the correct application of the treating physician's rule as set forth above. As to Dr. Winter's psychiatric work-related activities assessment – in which he concluded that Plaintiff's "chronic mood and psychiatric symptoms, his work capacity is seriously limited, but not precluded" – the ALJ indicated that he gave this opinion "great weight" because it was "consistent with the evidence of record." [AR 15]   Related to this conclusion, the ALJ noted that Plaintiff had been off his medications for five days, but with medication "he has had a very good response." [AR 19]  However, elsewhere in the order, the ALJ noted and relied upon Dr.

11

Winter's notes which opined that many of Plaintiff's hospitalizations were due to attention seeking, including a "long-standing belief of exaggerated symptoms reporting," and that Plaintiff abused alcohol and drugs, and was not compliant with treatment and medication. [AR 17, 19]  In addition, the ALJ specifically gave "no weight" to Dr. Winter's opinion that Plaintiff would miss more than four days of work during a month, because the record indicates that he "appears to attend group and appointments on time, with only occasional missed appointments (usually due to legal problems)." [AR 19]  The ALJ did not address Dr. Winter's opinions that Plaintiff had severe limitations are in the area of managing street, working a consistent pace, and the likely need for frequent interruption in his work due to increased psychological symptoms. [AR 676]

The order, and related analysis, fails to reveal that the ALJ applied the correct legal standards when evaluating Dr. Winter's various treating physician opinions.  The ALJ apparently concluded that Dr. Winter's opinion was not entitled to controlling weight – in that he gave portions of the opinion mixed weight – but the order does not reveal application of the two factors necessary to make that determination.  The ALJ made no finding as to whether Dr. Winter's opinion was supported by medically acceptable clinical and laboratory diagnostic techniques.  Additionally,  although the ALJ provided specific reasons as to why some of Dr. Winter's opinion was consistent with the record (and thus entitled to "great" weight) and one specific opinion related to days missed from work during a month was non consistent with the evidence in the record (and thus entitled to "no" weight), the ALJ did not address most of Dr. Winter's opinion related to Plaintiff's mental limitations.  Furthermore, the ALJ completely failed to address the second step of the treating physician's rule which mandates that a treating

physician's opinion should be given deference and, as such, must be weighed by applying the six factors set forth in 20 C.F.R. §§ 404.1527 and 416.927.  *See Langley v. Barnhart, supra,* 373 F.3d at 1120 (finding improper evaluation of treating physician opinion where ALJ failed to consider what lesser weight to give opinion and failed to discuss the relevant factors).

As a result, the ALJ's order here was insufficient "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins v. Barnhart, supra,* 350 F.3d at 1300 (*citing* SSR 96-2p). Therefore, I must remand because I cannot properly review the ALJ's decision without these necessary findings. *Id.*

## B. *Assessment of Opinions of Non-Treating Physician Opinions*

I note that Plaintiff also asserts on appeal that the ALJ's order fails to apply the proper legal standard when assessing the opinions of the non-treating physicians – specifically, the opinion of Dr. Merrill, a state agency psychiatrist who performed a consultive psychiatric examination of Plaintiff in October 2001, and the opinion of Dr. Zinneck, a non-examining state agency psychologist who issued a consultive report in June 2003.

The ALJ is required to evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). If an ALJ intends to rely on a non-treating physician or examiner's opinion, he must explain the weight he is giving to it. 20 C.F.R. §§ 404.1527(f) and 416.927(f). "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin*

13

*v. Barnhart*, *supra* (*quoting Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995)).

As a result, on remand I direct the ALJ to re-assess the opinions of the non-treating physicians pursuant to 20 C.F.R. §§ 404.1527(f) and 416.927(f), and to examine those opinions to see if they outweigh the treating physicians' opinions as outlined above. *Hamlin v. Barnhart, supra.*

*C.  Assessment of Non-Acceptable Medical Source Opinion*

Finally, I note that Plaintiff does not dispute that Suzanne deRoin, F.T.P., is not an acceptable medical source and, thus, her opinion is not entitled to any special weight. *See* 20 C.F.R. §§ 404.1513 and 416.913.  Rather, Plaintiff argues on appeal that the ALJ's rulings were inconsistent because he evaluates Ms. deRoin's treatment notes and finds that a portion of the observations therein are consistent with the medical record – giving them "greater weight" – but then failed to consider her physical assessments.  However, the ALJ's order properly assessed how Ms. deRoin's treatment observations were consistent or inconsistent with the record and, as such, the relative weight assignable to those medical records.  [AR 20-21]  The fact that he then rejected her opinion related to Plaintiff's resulting physical impairments does not make a "blatant inconsistency [the] cannot withstand careful analysis." *See Nichols v. Commissioner,* 260 F.Supp.2d 1057, 1065 (D. Kan. 2003)(finding no error when the ALJ afforded a nurse practitioner's treatment notes appropriate weight, while concluding that her conclusions could not be afforded controlling weight).

Accordingly, IT IS ORDERED that the Commissioner's decision is REVERSED and REMANDED to the SSA Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.

Dated: September __11__, 2007 in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE